**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| MICHAEL AND JACQUELINE CITTA, | : | Civil Case No. 12-cv-02274 (FLW) |
| | : | Bankr. Case No. 10-34162 (KCF) |
| Debtors | : | |
| | : | **OPINION** |

**WOLFSON, United States District Judge:**

      Appellants Michael and Jacqueline Citta (collectively, "Debtors") appeal from the final decision of the United States Bankruptcy Court for the District of New Jersey, granting Appellee Sun National Bank's ("Sun") motion to dismiss Debtors' converted Chapter 7 bankruptcy case.  The issue presented on this appeal is whether the Bankruptcy Court erred in dismissing Debtors' bankruptcy case pursuant to 11 U.S.C.S. § 707(b), which allows the Bankruptcy Court to dismiss a petition upon a finding that granting relief would be an abuse of Chapter 7 of the Bankruptcy Code.  This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C.S. § 158(a)(1).  For the reasons that follow, the Court concludes the Bankruptcy Court did not abuse its discretion in dismissing Debtors' case and affirms the decision of the Bankruptcy Court.

## I.  BACKGROUND & PROCEDRAL HISTORY

      There is a lengthy and substantial factual and procedural history matter relevant to

the instant appeal.  Facts are undisputed unless otherwise noted.[1]

Debtors, husband and wife, are employees of the Toms River Board of Education; Mr. Citta works as an elementary school principal and Mrs. Citta is a schoolteacher.  See Bankr. Dkt. No. 87 at ¶ 12 (Debtor Cert. in Opp.); Bankr. Dkt. No. 83-2 at 4 (Depo. Of Michael Citta); Debtors Br. at 3.  Sun is a creditor of Debtors.  Bankr. Dkt. 20-1 at ¶ 2 (Sun Ch. 11 Cert.). Sun sued Debtors in the Superior Court of New Jersey, Camden County, Law Division in the matter known as Sun National Bank v. Michael Citta, Jacqueline Citta, et al., Docket No. CAM-L-2010-09, and obtained Final Judgment by Default against them in the amount of $550,896.47 as of June 18, 2009.[2]  Id..  Thereafter, Sun sought to collect on the judgment by garnishing Debtors' salaries from the Toms River School District.  Id. at ¶ 4; Debtors Br. at 3.

However, before a wage execution was issued, Debtors filed a Chapter 7 Petition in the Bankruptcy Court under Case No. 10-13291 in February of 2010.[3]  Bankr. Dkt. 20-1 at ¶ 4; Sun Br. at 2.  Debtors listed Sun as a creditor holding an unsecured claim in the amount of $552,426.  Bankr. Dkt. No. 1 & 2 (Schedule F).  The Bankruptcy Court dismissed Debtors' case on June 21, 2010, after Sun's motion and a hearing, having found that Debtors filed their Petition in bad faith under 11 U.S.C.S. § 707(a) because

---

[1]  The record on appeal comprises items relating to Debtors' previous Chapter 7 filing, Debtors' Chapter 11 filing, and Debtors' converted Chapter 7 case.  See Dkt. No. 3 (Designation of Record on Appeal) & 5 (Counter-Designation of Record on Appeal). Thus, most references to the record will be to the Bankruptcy Docket.  Additionally, where facts are not disputed, reference may be also made to the parties' briefs.
[2]  The amount currently owed by Debtors now appears to exceed $600,000.  See Bankr. Dkt. 20-1 at n.1.
[3]  Sun claims Debtors filed for bankruptcy "on the eve" of Sun obtaining an Order for wage execution and implies that Debtors timed the filing of their Chapter 7 Petition in order to prevent Sun from garnishing their wages by taking advantage of the automatic stay provision of the Bankruptcy Code, 11 U.S.C.S § 362.  See Bankr. Dkt. 20-1 at ¶ 4; Sun Br. at 2.

Debtors claimed "improper expense deductions and unsupported salary deductions" in their Form B22A, which constituted a "blatant example of attempting to inflate the budget to fit within the means test."[4] See Transcript of Bankruptcy Decision, June 21, 2010, 10:20-22.

After Debtors' Chapter 7 Petition was dismissed, Sun resumed taking steps to garnish Debtors' wages until Debtors filed a Chapter 11 Petition for bankruptcy on August 5, 2010, which is the starting point of the action underlying the instant appeal.[5] See Bankr. Dkt. 20-1 at ¶ 8; Sun. Br. at 2-3; Debtors Br. at 2. Both Sun and the United States Trustee objected to Debtors' Chapter 11 plan, arguing that Debtors had insufficient income to make the payments set forth in the plan. Bankr. Dkt. 87 at ¶ 3; Sun. Br. at 3; Debtors Br. at 4. The Bankruptcy Court agreed with Sun and the U.S. Trustee that Debtors' plan was not feasible and converted the case to a Chapter 7 on September 15, 2011.

On January 11, 2012, Sun moved to dismiss the converted Chapter 7 case pursuant to § 707(b), arguing that granting relief to Debtors would constitute an abuse of Chapter 7 of the Bankruptcy Code. See Bankr. Dkt. 83; Sun Br. at 3. The Bankruptcy

---

[4] A debtor is required to file Form B22A in a Chapter 7 bankruptcy case. Form B22A is a statement of a debtor's current monthly income and includes the means test calculation. The means test, set forth in 11 U.S.C.S. § 707(b)(2)(A), is a formula for calculating a debtor's disposable income based on a debtor's current monthly income reduced by the allowable deductions under § 707(b)(2)(A)(ii), (iii) and (iv). Under the means test, if a debtor's disposable income multiplied by 60 is not less than the lesser of "(I) 25% of the debtor's nonpriority unsecured claims in the case; or (II) $7,025, whichever is greater or $11,725" it is presumed that granting the debtor relief under Chapter 7 would be an abuse of the Bankruptcy Code and process. 11 U.S.C.S. § 707(b)(2)(A)(i).

[5] Again, Sun claims Debtors filed their Chapter 11 Petition "on the eve of Sun obtaining the Order for the wage executions from the Superior Court of New Jersey."

Court issued an oral decision on March 5, 2012,[6] finding that Debtors' Chapter 7 Petition "does not pass the good faith analysis" based upon the totality of the circumstances. See Transcript of Bankruptcy Decision, March 5, 2012 (hereinafter "Bankruptcy Transcript") at 3:21-22, 5:7-10.  The Bankruptcy Court noted that "based on the Debtors' current income, they now pass the means test . . . [but] passing the means test is only part of the equation.  [I]t means that a presumption of bad faith does not arise, but it does not mean that the case was necessarily filed in good faith." Id. at 3:21-4:5.  The Bankruptcy Court found that the facts showed that Debtors "are still demonstrating an unwillingness to reduce expenses in order to try to repay anything to their creditors." Id. at 4:8-9.  In particular, Debtors took responsibility for a $400 a month lease for a pickup truck after not being able to pay $269 a month for their Pontiac.[7] Id. at 4:11-13.  The Bankruptcy Court further found that "[i]nstead of trying to find less expensive housing for their family the Debtors insist on trying to remain in a home that they admit they cannot afford." Id. at 4:13-15.  Finally, the court noted Debtors continued to "remain intentionally vague about the necessity of repaying the pension loan" rather than repaying their creditors. Id. at 4:16-17.  Ultimately, the Bankruptcy Court concluded that Debtors "have not shown any genuine desire to repay their creditors." Id. at 5:3-10.  The Bankruptcy Court subsequently issued an order dismissing Debtors' case, and the instant appeal followed.

## II. STANDARD OF REVIEW

When sitting as an appellate court reviewing an order of the bankruptcy court, a

---

[6]  The transcript of the Bankruptcy Court's decision incorrectly lists the date as March 5, 2011.

[7]  Debtors' Pontiac was ultimately repossessed.  The pickup truck is actually leased by Debtors' parents; however, it is used and paid for by Debtors.  Bankr. Dkt. 87 at ¶ 8.

district court "'review[s] the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof.'" Reconstituted Comm. of Unsecured Creditors of the United Healthcare Sys. v. State of N.J. DOL (In re United Healthcare Sys.), 396 F.3d 247, 249 (3d Cir. 2005) (quoting Interface Group-Nevada v. TWA (In re TWA), 145 F.3d 124, 130-31 (3d Cir. 1998). Review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 113 S. Ct. 2264, 2280, 124 L. Ed. 2d 539 (1993). Mixed findings of fact and conclusions of law must be broken down, and the applicable standards – "clearly erroneous" or de novo - must be appropriately applied to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) and Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir. 1981)). "An abuse of discretion involves 'a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" Valenti v. Mitchel, 962 F.2d 288, 299 (3d Cir. 1992) (quoting Int'l Union, UAW v. Mack Trucks, Inc., 820 F.2d 91, 95 (3d Cir. 1987)); see also Smith v. Geltzer, 507 F.3d 64, 72 (2d Cir. 2007) ("A bankruptcy court exceeds its allowable discretion where its decision (1) 'rests on an error of law such as application of the wrong legal principle or a clearly erroneous factual finding,' or (2) 'cannot be located within the range of permissible decisions,' even if it is 'not necessarily the product of a legal error or clearly erroneous factual finding.'" (citing Schwartz v. Aquatic Dev. Group Inc., (In re Aquatic Dev. Group Inc.), 352 F.3d 671, 678 (2d Cir. 2003))).

This Court reviews the Bankruptcy Court's decision to dismiss Debtors' case for

abuse of discretion. Perlin, 497 F.3d at 372 ("the good-faith determination rests within the sound discretion of the bankruptcy court"); see also Price v. United States Trustee (In re Price), 353 F.3d 1135, 1138 (9th Cir. Cal. 2004) (appellate court "review[s] a bankruptcy court's decision to dismiss a case for abuse of discretion"). In reviewing the Bankruptcy Court's decision, this Court considers all the evidence that comprised the record before the Bankruptcy Court at the time of the appeal. See Matter of Halvajian, 216 B.R. 502, 509 (D.N.J. 1998).

### III. DISCUSSION

Debtors raise three issues on appeal. First, Debtors argue that the Bankruptcy Court erroneously found that Debtors could afford to pay their creditors. Second, the Debtors contend that the Bankruptcy Court erred in concluding that Debtors could avoid repaying certain pension loan obligations. Lastly, Debtors argue that the Bankruptcy improperly relied on Debtors' ability to repay their debt in determining that Debtors had filed their bankruptcy petition in bad faith. These first two arguments challenge the Bankruptcy Court's factual findings and are subject to the clearly erroneous standard of review; the last argument concerns the Bankruptcy's Court's decision to dismiss Debtors' case and is reviewed for abuse of discretion. For the reasons set both below, the Court concludes that the Bankruptcy Court's factual findings are not clearly erroneous and its decision to dismiss Debtors' case was not an abuse of discretion.

Initially, I note that § 707(b) of the Bankruptcy Code provides two separate bases for dismissing a debtor's filing; "bad faith and the totality of the circumstances are

separate, distinct bases for a finding of abuse" under § 707(b).[8] DeAngelis v. Hoffman (In re Hoffman), 413 B.R. 191, 195 (Bankr. M.D. Pa. 2008). Either basis is sufficient grounds for dismissal. In re Henebury, 361 B.R. 595, 607 (Bankr. S.D. Fla. 2007) ("the debtor's total financial situation as a measure of ability to pay, and bad faith are separate and sufficient grounds for dismissal. Either ability to pay or bad conduct in connection with the bankruptcy will warrant dismissal for abuse under § 707 (b)(3)").

"When considering whether a [C]hapter 7 petition was made in bad faith under § 707(b)(3)(A), the Court focuses on the debtor's conduct." In re Honkomp, 416 B.R. 647, 649 (Bankr. N.D. Iowa 2009); accord In re Hornung, 425 B.R. 242, 249 (Bankr. M.D.N.C. 2010) (in deciding dismissal under § 707(b)(3)(A), court looks to debtor's intent and conduct time of bankruptcy filing without limitation to debtor's financial situation). Similarly, § 707(b)(3)(B) directs a bankruptcy court to consider "the totality of the circumstances of the debtor's financial situation" to determine whether granting relief would be an abuse of Chapter 7, including "whether the bankruptcy petition was filed in bad faith. 11 U.S.C.S. § 707(b)(3)(B).[9]

---

[8] Neither "good faith" or "bad faith" is defined in the Bankruptcy Code, although it is well-settled that "at the very least, good faith requires a showing of honest intention." Tamecki v. Frank (In re Tamecki), 229 F.3d 205, 207 (3d Cir. 2000). The good faith inquiry is fact-intensive and "[a]n assessment of a debtor's good faith requires consideration of all of the facts and circumstances surrounding the debtor's filing for bankruptcy." Perlin, 497 F.3d at 372 ("Whether the good faith requirement has been satisfied is a 'fact intensive inquiry' in which the court must examine 'the totality of facts and circumstances' and determine where a 'petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.'")). Although "'[t]he facts required to mandate dismissal based upon a lack of good faith are as varied as the number of cases,'" a court's discretion to dismiss for lack of good faith is not unlimited. Id. at 373.

[9] The "totality of the circumstances" test encompasses many factors including:

> (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

In sum, "[s]ection 707(b) focuses on the purpose of Chapter 7 relief under the Bankruptcy Code, primarily the issue of whether the petitioner is the honest and needy consumer debtor the Code was intended to protect."  Office of the United States Trustee v. Mottilla (In re Mottilla), 306 B.R. 782, 788 (Bankr. M.D. Pa. 2004); see also United States v. Hilmes (In re Hilmes), 438 B.R. 897, 911-912 (N.D. Tex. 2010) ("In assessing bad faith, courts consider factors similar to those considered under section 707(b)(3)(B), but focus on factors such as the circumstances that precipitated the debtor's filing for bankruptcy the debtor's intentions in filing for bankruptcy and whether the debtor has honestly disclosed his financial conditions").  With the foregoing standard in mind, I turn to Debtors' arguments on appeal.

Debtors first argue that the Bankruptcy Court erred in finding that Debtors could afford to pay their unsecured creditors.  This argument is misplaced.  The Bankruptcy Court found that the facts showed that "Debtors are still demonstrating an <u>unwillingness to reduce expenses</u> in order to try to repay anything to their creditors;" and therefore

---

(2) whether the debtor made consumer purchases far in excess of his ability to repay;
(3) whether the debtor's proposed family budget is excessive or unreasonable;
(4) whether the debtor's schedules and statements of current income and expenditures reasonably and accurately reflect his true financial condition;
(5) whether the bankruptcy petition was filed in bad faith;
(6) whether the debtor had engaged in eve of bankruptcy purchases;
(7) whether the debtor enjoys a stable source of future income;
(8) whether he is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code;
(9) whether there are state remedies with the potential to ease his financial predicament;
(10) the degree of relief obtainable through private negotiations; and
(11) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities

Hoffman, 413 B.R. at 195.

Debtors "have not shown any genuine desire to repay their creditors."  Bankruptcy Transcript at 4:8-9, 5:3-4 (emphasis added).  In support of this finding, the Bankrupctcy Court relied on the fact that "[a]fter not being able to pay $269 a month on their Pontiac [Debtors] took responsibility for a lease of $400 a month for a pickup truck," id. at 4:11-13, and the fact that "Debtors insist on trying to remain in a home that they admit they cannot afford" and pay a mortgage of approximately $3,500 a month rather than trying to find less expensive housing.  Id. at 4:13-15.  Significantly, the Bankruptcy Court also found that Debtors would have an additional $2,562.66 a month available to repay creditors if Debtors stopped making payments on their pension loan.[10]  Id. at 4:25-5:1.  Thus, the Bankruptcy Court found that Debtors had significant expenses that they could, but chose not to, reduce in order to repay creditors; that finding is supported by the record and is not clearly erroneous.

In that connection, Debtors also argue that the Bankruptcy Court erred in finding that Debtors could avoid repaying their pension loans.  On appeal, Debtors assert they cannot stop repaying their pension loans because these are government pension loans exempt from the automatic stay, and thus are not "debts" pursuant to 11 U.S.C.S. § 362(b)(19).  See Debtors Reply at 2-3.  Debtors contend that their employer was entitled to continue to deduct the loan payments from their wages, and therefore it was error for the Bankruptcy Court to consider these loans in dismissing the Debtors' case.  Debtors' argument on appeal, however, fails to address the actual concerns expressed by the

---

[10]    Debtors further argue that even if they stopped making pension loan payments, they would not have enough money each month to pay their unsecured creditors.  See Debtor Br. at 9.  For the reasons stated above, Debtor's argument confuses the actual finding of the Bankruptcy Court.  The Bankruptcy Court did not rely on Debtors' ability to repay all of their lenders, but on an ability to make efforts toward repayment of some of their debts.

9

Bankruptcy Court.

The Bankruptcy Court found that Debtors "remain intentionally vague about the necessity of repaying the pension loan," and that Debtors did not certify that the "failure to repay their pension loans will result in them being fired." Bankruptcy Transcript at 4:16-17, 23-25. The Bankruptcy Court also noted that if Debtors stopped making the loan payments they would have an additional $2,562.66 a month to use to repay creditors. Id. at 4:25-5:1. Thus, the pension loans factor into the Bankruptcy Court's decisions in two ways.

First, by not certifying that not repaying the pension loans would result in them being fired, Debtors failed to provide the Bankruptcy Court with evidence that the pension loan was part of a mandatory retirement plan.[11] Debtors only provided the Bankruptcy Court with their self-serving certification about the pension loan repayments. The Bankruptcy Court thus could not determine whether Debtors' "failure to repay their loans [would] result in them being fired." Bankruptcy Transcript at 4. In the absence of any evidence, a finding by the Bankruptcy Court that Debtors could stop making the pension loan repayments is not "so unlikely that no reasonable person would find it to be true." Concrete Pipe & Prods., 508 U.S. at 623. Significantly, Debtors have pointed to no evidence on appeal that the Bankruptcy Court failed to consider in reaching this finding. Accordingly, the Court concludes that the Bankruptcy Court's finding that Debtors could stop making their pension loan payments was not clearly erroneous.

---

[11] "The term 'mandatory retirement contributions' implies a situation where participation in a retirement plan is a condition of the job, i.e., the original contributions are a deduction that an employer would take from all employees. This is consistent with the [IRS] Manual, which requires that an involuntary deduction 'must be a requirement of the job.'" In re Lenton, 358 B.R. 651, 657 (Bankr. E.D. Pa. 2006) (citing I.R.M. § 5.15.1.10).

10

Debtor's remaining argument is that the Bankruptcy Court improperly relied primarily on Debtors' ability to repay their debts as the basis for dismissing Debtors' case. In that connection, Debtors argue that the Third Circuit's decision in <u>Perlin</u> prohibits a bankruptcy court from dismissing a case for bad faith based solely on a finding of a debtor's ability to pay. <u>Perlin</u>, 497 F.3d at 374 ("[A] bankruptcy court's ultimate finding of bad faith may not be based <u>exclusively or primarily</u> on a debtor's substantial financial means. Otherwise, dismissal would essentially be based upon a debtor's mere ability to repay, which is expressly prohibited by the legislative history." (Emphasis added.)). Debtors contend that the Bankruptcy Court dismissed Debtors' case primarily, if not solely, on its finding that Debtors could afford to pay their unsecured creditors, and thus the Bankruptcy Court's decision contravenes the holding of <u>Perlin</u>.

Contrary to Debtors' position, there is ample support for the Bankruptcy Court's inquiry into of the reasonableness of Debtors' budget in determining whether to dismiss the case for abuse of Chapter 7. <u>E.g.</u>, <u>Hoffman</u>, 413 B.R. at 195 ("whether debtor's proposed family budget is excessive or unreasonable" and "whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities" are proper factors to consider under § 707(b)(3)(B) totality of the circumstances test); <u>DeAngelis v. Ramsay (In re Ramsay)</u>, 440 B.R. 85, 91 (Bankr. M.D. Pa. 2010) ("[C]hapter 7 debtors are expected to do some 'financial belt tightening and may be required to forgo amenities to which they had been accustomed.'"); <u>see also</u> <u>Perlin</u>, 497 F.3d at 375 (bad faith analysis under § 707(a) may include consideration of a debtor's expenses). It is therefore entirely proper for the Bankruptcy Court to consider Debtors' housing expenses and car payments in determining whether these expenses are

11

reasonable. See Ramsay, 440 B.R. at 95 (finding that debtor's mortgage and car payments were excessive and that debtor could reduce his expenses); Hoffman, 413 B.R. at 197 (finding debtor's housing expenses excessive). As explained previously, the Bankruptcy Court did not err in finding that Debtors' housing and car expenses were unreasonable because they could reduce be reduced. Thus, the Bankruptcy Court did not abuse its discretion in dismissing Debtors' case by relying on Debtors' failure to reduce these expenses. See, e.g., Hoffman, 413 B.R. at 195 ("[W]hen considered within the totality of the circumstances, a case may be dismissed on the sole basis that a debtor has the means to repay his debts, although dismissal is not mandated on this factor alone . . . ."); In re Lanza, 450 B.R. at 86 ("I find no basis that Congress intended to exclude consideration of a debtor's ability to repay debts when considering a motion to dismiss under § 707(b)(3).").

Debtors' reliance on Perlin is unavailing for similar reasons. The Perlin court made clear that "[w]hen a debtor capable of at least partial repayment has made every effort to avoid payment of an obligation, lack of good faith sufficient to justify dismissal may be found." Perlin, 497 F.3d at 374. Here, not only did the Bankruptcy Court find that Debtors could make some repayments to their creditors if they reduced their expenses, but also that Debtors made no attempt to repay their creditors at all. See Bankruptcy Transcript at 4:8-10, 5:3-4. Thus, although the Bankruptcy Court may have alluded to Debtors' ability to repay their debts, it is clear that the Bankruptcy Court centered its decision on Debtors' "unwillingness to reduce expenses in order to try to repay anything to their creditors." Id. at 4:8-9. Indeed, Debtors' actions through the history of this case and their previous Chapter 7 filing strongly suggest that the sole basis

12

for Debtors' bankruptcy filings is to "make every effort to avoid repayment of an obligation" – both of Debtor's bankruptcy filings were immediately preceded by Sun's attempt to execute on the debt it held.  This alone provides grounds for a finding of bad faith and dismissal under Perlin.  Id. 497 F.3d at 374.  Accordingly, dismissal of Debtors' case here does not run afoul of the Third Circuit's holding in Perlin.

Finally, I note that the Bankruptcy Court's finding that Debtors were "intentionally vague" about their pension loan payments provides further support for the dismissal of Debtors' case.  Put differently, because Debtors did not show that the pension loan payments are mandatory, it was improper for Debtors to include the payments as necessary expenses in their filing schedules.  See In re Lenton, 358 B.R. 651, 660 (Bankr. E.D. Pa. 2006).  ("Repayment of loans from voluntary retirement accounts through mandatory payroll deduction does not meet the necessary expense test under the IRS Manual, the standard adopted by the means test").  Thus, Debtors demonstrated a lack of candor to the Bankruptcy Court regarding the necessity of repaying the pension loans and of the nature of their financial situation.[12]  The

---

[12]   This lack of candor has been a theme throughout Debtors' bankruptcy filings.  In the decision below, the Bankruptcy Court referred back to the "improper expense deductions and unsupported salary deductions" in Debtors' Form B22A and commented that Debtors had "gerrymandered" the means test in their initial bankruptcy filing. Id. at 5:6.  Similarly, in the Bankruptcy Court's decision in that previous Chapter 7 matter – which was incorporated into the Bankruptcy Court's decision in the present case – the Bankruptcy Court found that Debtors filing schedule supported a finding of bad faith "because it's such a blatant example of attempting to inflate the budget to fit within the means test" and that Debtors "also demonstrate[d] a flagrant disregard for the specific instructions as what is and is not an appropriate expense." Transcript of Bankruptcy Decision, June 21, 2010, 10:20-25.
   Moreover, several other additional aspects of this case would appear to demonstrate Debtors' bad faith, although the Bankruptcy Court did not explicitly rely on these in dismissing Debtors' case.  For example, Debtors filed both of their bankruptcy petitions when Sun sought to collect on the debt it held.  Additionally, Sun has pointed

Bankruptcy Court properly could rely on this lack of candor in dismissing Debtor's case. See In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989) ("Substantial abuse [of Chapter 7] can be predicated upon either lack of honesty or want of need."); see also Glunk, 342 B.R. at 734 (noting that debtor's "less than full and candid disclosure in the bankruptcy proceeding" is factor to be considered in determining whether debtor filed for bankruptcy in good faith).

## V. CONCLUSION

For the reasons set forth above, the Court concludes that Debtors have failed to demonstrate the Bankruptcy Court abused its discretion in dismissing Debtors' case for abuse of Chapter 7 of the Bankruptcy Code. Accordingly, the Bankruptcy Court's Order to dismiss Debtors' case is **AFFIRMED**.

An Order will be entered consistent with this Opinion.


Dated: December 19, 2012                    /s/    Freda L. Wolfson
                                            Freda L. Wolfson, U.S.D.J.

---

out throughout this litigation that Debtors changed their tax withholdings on their W-4 forms immediately prior to the filing of their first Chapter 7 petition, effectively reducing their net monthly incomes. See Bankr. Dkt. 20-1 at ¶ 14a; Sun Br. in Opp. at 5.